# EXHIBIT 1

FILED: 12/22/2023 10:47 AM
Vermont Superior Court
Chittenden Unit
23-CV-05339

STATE OF VERMONT

SUPERIOR COURT
Chittenden Unit

CIVIL DIVISION
Docket No. 23-CV-_____

KATHRYN C. RINCON,
    Plaintiff,

    v.

CURALEAF, INC.,
    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Kathryn C. Rincon ("Ms. Rincon"), by and through counsel of record Langrock Sperry & Wool, LLP, hereby complains against Defendant Curaleaf, Inc. ("Curaleaf") as follows:

### JURISDICTION AND VENUE

1.    Ms. Rincon is a resident of Shelburne, Vermont.

2.    On information and belief, defendant Curaleaf, Inc. is a Delaware corporation with a headquarters office in Wakefield, Massachusetts. Curaleaf, Inc. is a wholly owned subsidiary of Curaleaf Holdings, Inc., a foreign corporation.

3.    The court has subject matter jurisdiction over the claims stated herein; Ms. Rincon was employed by Curaleaf in Vermont, and she regularly performed services for Curaleaf from her home office in Shelburne, Vermont. This lawsuit arises from that employment relationship.

4.    Venue is proper in this court.

### GENERAL ALLEGATIONS

5.    All preceding paragraphs are incorporated herein by reference.

6.    On or about February 7, 2022, Curaleaf offered Ms. Rincon employment as the Senior Director of Brand Marketing.

1

7.      The terms of this offer were set forth in an offer letter dated February 7, 2022 (the "Offer Letter").

8.      Among the terms of Curaleaf's offer was an "open time off" benefit. The Offer Letter states in relevant part, "You will not accrue vacation time and will be a part of an open time off policy." The letter continues, "Under this open policy, there is no set limit on how many days off you may take; instead, you partner with your manager and team to ensure that there is no disruption to the business when you are out of the office."

9.      This open time off benefit was a material term for Ms. Rincon.

10.     Ms. Rincon explained during pre-employment discussions that she already enjoyed significant time-off benefits at her then-current job.

11.     Curaleaf representatives responded by explaining that the Company's open time off policy was generous and used as needed by employees.

12.     Ms. Rincon explained that the company's open time off policy was a significant reason she was interested in potentially joining Curaleaf.

13.     Curaleaf representatives assured Ms. Rincon that she would be eligible for this benefit.

14.     In reliance on representations by Curaleaf that Ms. Rincon would be eligible for the open time off policy (and other terms offered by Curaleaf), Ms. Rincon accepted the job offer and signed the Offer Letter on or about February 8, 2022.

15.     To accept the job with Curaleaf, Ms. Rincon resigned from a job where she had nearly 22 years of seniority (with significant time-off benefits)

16.     Ms. Rincon's employment as the Senior Director of Brand Marketing began on or about April 1, 2022.

17.     Ms. Rincon primarily worked on a remote basis from her home office in Shelburne, Vermont.

18.     In or around March 2023, Ms. Rincon's mother was diagnosed with stage IV esophageal cancer; Ms. Rincon temporarily relocated to California to be with her mother while she continued to work remotely.

19.     In late June 2023, Ms. Rincon sought time off work so that she could care for her mother on a full-time basis.

20.     Starting on or about June 26, 2023, Ms. Rincon began caregiver leave under the FMLA and the Vermont Parental and Family Leave law. Ms. Rincon expected to return to work on or about July 24, 2023.

21.     Although the FMLA and Vermont Parental and Family Leave law provide for unpaid time off to care for a covered family member, Curaleaf's Human Resources representative Meghan Barr and Ms. Rincon's manager Syndey Chernish confirmed that this time off would nevertheless be paid under Curaleaf's open paid time off policy.

22.     Consistent with these representations, Curaleaf in fact paid Ms. Rincon's full salary for several weeks while she was on FMLA/Vermont Parental and Family leave.

23.     On or about July 20, 2023, Ms. Rincon advised her manager Syndey Chernish, Human Resources representative Barr, and a human resources representative named Teresa (last name unknown) that she would not be able to return on July 24 as originally expected due to her mother's condition (which had worsened).

24.     On July 25, 2023, Ms. Rincon's mother passed away.

25.     Curaleaf unilaterally designated July 25 through July 28 as bereavement leave.

26.     Curaleaf then abruptly – and without notice or explanation to Ms. Rincon – simply ceased paying Ms. Rincon's salary.

3

27.     Ms. Rincon did not know that Curaleaf had ceased paying her salary until around August 18, 2023 (when a direct deposit of her salary would otherwise have been made).

28.     On or about July 31, 2023, Ms. Rincon sought – and received – FMLA and Vermont Parental and Family leave for her own serious health condition (PTSD resulting from certain traumatic events at the end of her mother's life).

29.     Curaleaf did not say anything to suggest that this leave would not be paid under the open time off policy.

30.     Based on Curaleaf's earlier representations that Ms. Rincon's FMLA leave would be paid under the open leave policy, Ms. Rincon reasonably understood that her time off would continue to be paid.

31.     Ms. Rincon's leave was expected to last until late October 2023.

32.     Between August 18, 2023 (when Ms. Rincon learned that Curaleaf had ceased paying her salary) and October 30, 2023 (the expected end of her leave), Ms. Rincon repeatedly contacted Curaleaf representatives (including her manager, HR representative Barr and VP of People Operations Sarah Descoteaux) seeking reinstatement of her salary.

33.     In response to her inquiries, Ms. Rincon received varying explanations; on one day she was told that her leave had been converted to vacation (and that she had exhausted her vacation time), on another day she was told that the open leave policy had somehow been amended (without notice) and that Ms. Rincon no longer qualified, and on a third day she was told that her leave had somehow been denied by a third-party administrator.

34.     In one discussion with VP of People Operations Descoteaux, VP of People Operations Descoteaux stated, "I can understand how this feels like a bait-and-switch."

35.     In discussions with her manager Sydney Chernish and VP of People Operations Descoteaux between August 18 to October 30, Ms. Rincon explained that she felt Curaleaf had a toxic culture, and that this toxic culture contributed to Ms, Rincon's inability to return sooner.

36.     On or about October 30, 2023 – while Ms. Rincon was still on FMLA/Vermont Parental and Family leave – Curaleaf informed Ms. Rincon that she was being laid off effective November 1, 2023.

37.     According to Curaleaf, the company had determined that it no longer needed a brand director because it was taking a new marketing direction.

38.     On information and belief, Curaleaf re-assigned Ms. Rincon's duties to two people who previously reported to Ms. Rincon and did not abandon its need for brand development.

39.     Similarly situated women employees have been laid off or fired shorty after complaining about a toxic work culture at Curaleaf or the behavior of male supervisors.

## COUNT I – VIOLATION OF 21 V.S.A. 342(a)(1)

40.     All preceding paragraphs incorporated herein by reference.

41.     Defendant failed to pay Ms. Rincon regular wages for each week from July 28, 2023, through November 1, 2023 (except for a one-time payment in lieu of a waiting period for short-term disability).

42.     Defendant's failure to pay Ms. Rincon wages during this time constitutes a violation of 21 V.S.A. § 342(a)(1).

43.     Ms. Rincon is entitled to twice the amount of the unpaid wages, in an amount to be determined at trial.

44.     Ms. Rincon is entitled to costs and reasonable attorney fees incurred in prosecuting this action.

5

**COUNT II – BREACH OF CONTRTACT**

45.     All preceding paragraphs incorporated herein by reference.

46.     Curaleaf's Offer Letter – which was accepted by Ms Rincon and supported by the consideration of her services – contains the contractual terms of Ms. Rincon's employment.

47.     Curalef breached its contractual obligation to provide Ms. Rincon with open time off as provided in the Offer Letter.

48.     Ms. Rincon is entitled to damages, in an amount to be determined at trial, caused by Curaleaf's breach.

**COUNT III- BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

49.     All preceding paragraphs incorporated herein by reference.

50.     Curaleaf's conduct in promising paid leave, assuring Ms. Rincon that her FMLA leave would be paid under the open time off policy, and then refusing to provide paid leave from July 28, 2023 to November 1, 2023, violates the covenant of good faith and fair dealing.

51.     Curaleaf's conduct in terminating Ms. Rincon's employment while she was still on approved leave, and soon after she complained about Curaleaf's toxic culture, also violates the covenant of good faith and fair dealing.

52.     Ms. Rincon is entitled to damages, in an amount to be determined at trial, caused by Curaleaf's breach.

**COUNT IV – PROMISSORY ESTOPPEL**

53.      All preceding paragraphs incorporated herein by reference.

54.     Curaleaf promised that Ms. Rincon was eligible to receive open time off benefits as described in the offer letter.

55.     Curaleaf further assured Ms. Rincon that her FMLA leave was covered by the open time off policy and would be fully paid.

56.     Ms. Rincon relied to her detriment on these promises, representations and assurances.

57.     Ms. Rincon is entitled to damages, in an amount to be determined at trial, caused by Curaleaf's failure to honor its promises, representations and assurances.

## COUNT V – VIOLATION OF VERMONT PARENTAL AND FAMILY LEAVE ACT

58.     All preceding paragraphs incorporated herein by reference.

59.     Ms. Rincon was on a leave of absence covered by the Vermont Parental and Family Leave Act when Curaleaf terminated her employment.

60.     Curaleaf's decision to terminate Ms. Rincon's employment was related to her leave of absence and in retaliation for her taking protected leave.

61.     Curaleaf interfered with Ms. Rincon's protected leave, discriminated against her because she had taken protected leave, and retaliated against her for taking protected leave.

62.     Ms. Rincon is entitled to damages, in an amount to be determined at trial, caused by Curaleaf's violation.

63.     Ms. Rincon is entitled to costs and reasonable attorney fees incurred in prosecuting this action.

## COUNT VI – VIOLATION OF VERMONT FAIR EMPLOYMENT PRACTICES ACT
## (SEX AND DISABILITY DISCRIMINATION AND RETALIATION)

64.     All preceding paragraphs incorporated herein by reference.

65.     Curaleaf treated Ms. Rincon differently on the basis of sex when it ceased paying her salary, and when it terminated her employment after she complained about the toxic culture at Curaleaf.

66.     Curaleaf's actions constitute discrimination and retaliation in violation of the Vermont Fair Employment Practices Act ("FEPA").

7

67.     Curaleaf's discriminatory and retaliatory conduct against Ms. Rincon is part of a pattern and practice of discrimination against women employees at Curaleaf.

68.     In addition, Ms. Rincon was suffering PTSD (a disability under FEPA) and she was on a leave of absence as an accommodation at the time Curaleaf terminated her employment.

69.     Curaleaf's conduct constitutes disability discrimination, retaliation for seeking accommodations, and a failure to accommodate an individual with a disability under FEPA.

70.     Ms. Rincon is entitled to damages, in an amount to be determined at trial, caused by Curaleaf's violation.

71.     Ms. Rincon is entitled to costs and reasonable attorney fees incurred in prosecuting this action.

## COUNT VII – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

72.     All preceding paragraphs incorporated herein by reference.

73.     Ms. Rincon's conduct in complaining about Curaleaf's toxic work culture was protected by the public policy of the State of Vermont.

74.     Curaleaf's conduct in terminating Ms. Rincon's employment because she engaged in protected conduct is wrongful and violates public policy.

75.     Ms. Rincon is entitled to damages, in an amount to be determined at trial, caused by Curaleaf's violation.

**WHEREFORE**, Ms. Rincon respectfully requests that the Court grant the following relief:

(a)     An award of actual and compensatory damages in an amount to be determined at trial for Defendant's violation of Vermont's wage and hour laws: 21 V.S.A. 384 and 21 V.S.A. 342;

(b)     An award of double damages as provided by statute for Defendant's violation of Vermont's wage and hour laws;

(c)     An award of costs and attorney fees as provided by statute for Defendant's violation of Vermont's wage and hour laws,;

(d)     An award of actual and compensatory damages (including emotional distress damages) in an amount to be determined at trial against defendants for the other statutory and common law wrongs as alleged herein;

(e)     An award of costs and attorney fees as provided by statute for Defendant's violation of Vermont's discrimination, retaliation, and leave laws;

(f)     An award of punitive damages;

(g)     An award of all available interest at the maximum legal rate; and

(h)     For any and all other relief the Court deems appropriate.

## JURY DEMAND

Ms. Rincon demands a jury trial on all issues so triable.

DATED at Burlington, Vermont this 22nd day of December, 2023.

LANGROCK SPERRY & WOOL, LLP


_____
Eric D. Jones
210 College Street, Suite 400
Burlington, VT 05401
ejones@langrock.com
Phone:  802-864-0217

Attorneys for Plaintiff Kathryn C. Rincon

2072287.1

9